# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 1278 | **DATE** | 8/19/2004 |
| **CASE TITLE** | Lawrence Haas vs. Village of Hinsdale | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)

(10)■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: We grant the motion of defendant Village of Hinsdale for summary judgment [42-1] on count I of plaintiff's complaint. Judgment is hereby entered in favor of the Village of Hinsdale on count I of the complaint. Count II of the plaintiff's complaint is hereby dismissed without prejudice as the Court declines to exercise supplemental jurisdiction over it. This is a final and appealable order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | AUG 2 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 62 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
2004 AUG 19 PM 5: 23

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE W. HAAS, | ) | |
| | ) | |
| Plaintiff, | ) | **DOCKETED** |
| | ) | |
| v. | ) Case No. 01 C 1278 | **AUG 2 0 2004** |
| | ) | |
| VILLAGE OF HINSDALE, | ) | |
| | ) Wayne R. Andersen, District Judge | |
| Defendants, | ) | |

## MEMORANDUM, OPINION, AND ORDER

This case is before the Court on the motion of defendant Village of Hinsdale for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, we grant the motion for summary judgment as to the Americans with Disabilities Act (hereinafter "ADA") claim in Count I. Furthermore, we decline to exercise supplemental jurisdiction over the remaining state law claim contained in Count II, and we hereby dismiss that Count without prejudice.

## BACKGROUND

Plaintiff Lawerence Haas (hereinafter "Haas") asserts claims against the Village of Hinsdale (hereinafter "Village") under the ADA, as well as a state law claim for the intentional infliction of emotional distress. Haas was hired by the Village in February of 1978 as a tree trimmer, and was promoted to a Tree Trimmer II in 1997. On January 26, 2000, the Village discharged Haas from his employment alleging permanent physical restrictions that prevented Haas from performing the essential job duties of a Tree Trimmer II.

The job description of a Tree Trimmer II includes: the trimming of tree limbs and

62

shrubs in accordance with normal tree maintenance procedures; the removal of trees and tree units to make areas safe to pedestrians and traffic; the control of snow and ice through plowing and salting to ensure safe street travel; and spraying, planting, shipping, log removing, and conduction of Dutch Elm Disease surveys. The performance of this position requires skill in the use of a chainsaw and in the operation of tree bucket trucks and related vehicular equipment. The position further requires physical agility.

Prior to his discharge, Haas suffered an injury to his lower back on August 21, 1997. Immediately after his injury, Dr. Steven Mash examined Haas and placed him on restrictions for heavy lifting and for a sitting job with minimum walking. Haas continued to see Dr. Mash after periodic episodes of back pain. On February 23, 1998, Dr. Mash placed permanent restrictions on Haas of no lifting in excess of 30 pounds, and no repetitious bending or stooping. The 30 pound restriction was later lowered to 20 pounds by Dr. Mash's partner, Dr. Robert Vraney.

After the initial accident to his back, Haas' job duties were modified to be less intensive with physical labor. Haas continued to use a chain saw from a cherry picker, using a smaller saw and cutting smaller pieces of the tree branches. Haas was assigned some of the tasks of a tree crew supervisor, while other employees were assigned to his physical labor responsibilities. Some of Haas' initial job modifications continued throughout the rest of his employment. Haas also is constrained at home. He cannot sit, stand, or drive a car for more than 40 minutes. He also experiences back pain when washing dishes and vacuuming the house.

Haas contends in Count I that the Village violated his rights under the ADA. In Count II, Haas alleges a state law claim of intentional infliction of emotional distress

2

against the Village. The Village has moved for summary judgment arguing that Haas is not "disabled" as defined by the ADA, and that Haas is unable to perform the essential job functions of a Tree Trimmer II with or without reasonable accommodation.

## DISCUSSION

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will not render summary judgment if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The mere possibility of a factual dispute is not enough to defeat a summary judgment motion. *Id.* at 250; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

### I. ADA Claim

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In determining whether a disabled employee is qualified for his position, the court determines whether or not the employee is able to perform the essential functions of his job at the time the employer makes the allegedly discriminatory employment decision. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 818 (7th Cir. 2004); *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1013 (7th Cir. 1998).

3

The parties dispute as to whether or not Haas is disabled under the meaning of the ADA. However, we need not address this issue because regardless of whether Haas is disabled under the ADA, it is clear that he cannot perform the essential functions of his job, with or without reasonable accommodations. Without being able to perform the essential functions of a Tree Trimmer II, Haas' case of discrimination under the ADA must fail.

The test as to whether the employee is qualified for the job despite his disability is two-fold. First, the Court must consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate education background, employment experience, skills, licenses, etc." 29 C.F.R. § 1630.2(m). Second, the Court considers "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodations." *Id.*

The ADA further notes that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). The factors that must be considered in determining the essential functions of a particular job are: "[the] employer's opinion, [the] amount of time spent performing the function, [the] consequences for not requiring the individual to perform the duty, and past and current work experiences." *Ammons,* 368 F.3d at 818 (citing *Emerson v. Northern States Power Co.,* 256 F.3d 506, 512-13 (7th Cir. 2001)).

The undisputed essential functions of the Tree Trimmer II are those that are directly stated in the written job description: the trimming of tree limbs and shrubs in

4

accordance with normal tree maintenance procedures; the removal of trees and tree units to make areas safe for pedestrians and traffic; the control of snow and ice through plowing and salting to ensure safe street travel; and spraying, planting, chipping, log removing and the conduction of Dutch Elm Disease surveys. The description also mentions that the position requires physical agility. Furthermore, Haas admits that during the course of his work day, he was required to use pole saws, ropes, and sledge hammers.

Mr. Haas suffered from a permanent tear in his back that could not be surgically corrected. Doctors imposed permanent restrictions of limited bending and stooping and no lifting more than 20 to 30 pounds. In arguing the extent of his disability, Haas contends that he suffers from periodic episodes of pain which prevent him from basic activities to the extent that he cannot take care of himself. Specifically, Haas' injury has affected his ability wash dishes, vacuum the carpet, and sit or stand for more than forty minutes. Considering Haas' injuries and Dr. Mash and Dr. Vraney's subsequent restrictions, we find that Mr. Haas is unable to perform the essential functions of his job.

In addition, we find that Haas' duties, as performed after his injury, show that he could not perform his essential job functions with reasonable accommodation. The ADA requires covered entities to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). Haas argues that his performance of modified job duties demonstrated that he was still able to perform the essential functions of his position. Haas' modified job duties were a

significant change in the essential functions of his job. At times, instead of performing the job himself, Haas would delegate the heavier tasks to subordinates. Haas also argues that the written job description does not reflect any requirements of lifting, bending, stooping, or carrying at waist level or overhead. It is reasonable to assume after reading the job description that these requirements are inherent to the functions listed in the job description, especially under the description of "physical agility." The duties that Haas performed after his injury, such as more managerial job duties, would lead to the creation of a new position for Haas, not an accommodation for his position as a Tree Trimmer II. "[A]n employer [is not] obligated to create a 'new' position for the disabled employee." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996).

Therefore, due to Haas' injuries, he is unable to perform the essential functions of a Tree Trimmer II even with reasonable accommodation. Accordingly, the Village is entitled to summary judgment in its favor.

## II. The Interactive Process

The federal regulations implementing the ADA state that "to determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation." 29 C.F.R. § 1630.2(o)(3). Haas argues that the Village failed to meet with Haas to determine proper reasonable accommodation.

It is not enough for Haas to show that an employer failed to have an interactive conference. *Rehling v. City of Chicago,* 207 F.3d 1009, 1015-16 (7th Cir. 2000). To hold employers liable solely for failing to have an interactive conference would not serve the purposes of the ADA. *Id.* at 1016. Haas must demonstrate that the result of the lack of

6

interactive process was that the Village failed to fulfill its role in "determining what specific actions must be taken by an employer" in order to provide the employee with reasonable accommodation. *Id.* (citing *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). Haas must show that the Village's failure to engage in an interactive process resulted in a failure to identify reasonable accommodations for Haas. *Id.*

In *Ammons v. Aramark Uniform Services, Inc.*, the Seventh Circuit found that a discharge based on a medical evaluation, conversations with the employee's supervisors, and conversations with the employee "satisfied [the employer's] responsibility with respect to an interactive process." 368 F.3d 809, 820 (7th Cir. 2004). Similarly in our case, the Village's discharge decision was based on medical evaluations. Prior to Haas' discharge, an independent medical examiner, Dr. Sanders, discussed with Haas his essential job functions and reviewed the written job description of a Tree Trimmer II. After discussing with Haas essential job functions and performing medical examinations on separate occasions, Dr. Sanders came to the conclusion that Haas would have to change his job activity. In addition to these medical reports, the Village spoke with Haas' supervisors, and learned that Haas had delegated his duties to other employees instead of performing them himself. Taking all of this information into account, the Village determined that there were not any reasonable accommodations available with which Haas could perform his duties as a Tree Trimmer II.

While Haas did not have a interactive conference directly with the Village, the ADA requires only a "flexible, interactive process by which the employer and employee determine the appropriate reasonable accommodation." *Rehling,* 207 F.3d at 1015.

7

Through several doctors' evaluations of Haas as well as conversations with Haas' supervisors, the Village satisfied its responsibility for an interactive process to consider the availability of reasonable accommodations.

### III. State Law Claim

In Count II, Haas asserts a state law claim against the Village for intentional infliction of emotional distress. Because there are no surviving federal claims in this case, we decline to exercise supplemental jurisdiction over the remaining state law claim contained in this Count. *See, e.g., Centres, Inc. v. Town of Brookfield, Wisc.*, 148 F.3d 699, 704 (7th Cir. 1998); *Kennedy v. Schenberg, Fisher, & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). Therefore, we dismiss Count II without prejudice.

### CONCLUSION

For the foregoing reasons, we grant the motion of defendant Village of Hinsdale for summary judgment (# 42-1) on Count I of Plaintiff's Complaint. Judgment is hereby entered in favor of the Village of Hinsdale on Count I of the Complaint. Count II of the Plaintiff's Complaint is hereby dismissed without prejudice as the Court declines to exercise supplemental jurisdiction over it. This is a final and appealable order.

Wayne R. Andersen
United States District Judge

Dated: *August 19, 2004*